**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE<br>430 South Capitol Street SE<br>Washington, DC 20003<br><br>Plaintiff<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br><br>Defendant. | Civil Action No. 1:26-cv-2928 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

The Democratic National Committee, plaintiff herein, alleges:

1. Following the seizure of archived ballots from Fulton County, Georgia—and seeking to ensure that the Trump Administration does not attempt unprecedented abuses of criminal law enforcement tools to undermine upcoming elections—the Democratic National Committee (DNC) sent requests for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to components of the U.S. Department of Justice (DOJ) concerning any planned seizure of ballots, voting machines, and other voting system components.

2. Nearly five months later, the DNC has received no responsive documents, not even a list of documents withheld under statutory exemptions.

3. By withholding responsive documents past statutory deadlines, DOJ is violating FOIA.

4. To ensure that the American people obtain timely knowledge of potential threats to free and fair elections and to enable the DNC to take appropriate action to ensure voting rights are protected, the DNC now seeks this Court's aid to enforce FOIA requirements.

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. §§ 88 and 1391(e), as DOJ's headquarters is located in Washington, D.C., within this District, and a substantial part of the events or omissions giving rise to the DNC's claim occurred here.

**PARTIES**

7. The Democratic National Committee (DNC) is the oldest continuing party committee in the United States and is the Democratic Party's national committee as defined by 52 U.S.C. § 30101(14). The DNC is dedicated to electing Democratic candidates in Federal, State, and local elections across the country. In support of its mission, the DNC seeks to educate registered Democratic Party members and supporters concerning the electoral process and potential impediments to voting, to encourage and assist Democratic Party members and supporters in casting ballots and having those ballots counted, and to preserve free and fair elections in the United States.

8. The U.S. Department of Justice (DOJ) is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C. Components of DOJ include the Federal Bureau of Investigation (FBI) and the Criminal Division (CRM). Upon information and belief, DOJ has possession, custody, and control of records to which the DNC seeks access.

## ALLEGATIONS

**The Risk of Ballot Seizure to the 2026 Midterm Elections**

9. In early January 2026, President Trump told reporters that he regretted not having seized voting machines in December 2020, while the electoral count process was still ongoing. *See* Alan Feuer & Ashley Ahn, *Trump Regrets Not Seizing Voting Machines After 2020 Election*, N.Y. Times (Jan. 11, 2026).

10. Mere weeks later, the FBI raided the Fulton County Election Hub and Operation Center, seizing archived ballots and other records related to the 2020 presidential election for the ostensible purpose of obtaining evidence of criminal violations of the National Voter Registration Act, 52 U.S.C. § 20511, and the Civil Rights Act of 1960, 52 U.S.C. § 20701.

11. Following the Fulton County raid, a federal court found the warrant affidavit "defective in some respects," "troubling," and "far from perfect" but concluded that "seizure of materials from an election that occurred *five years ago*" did not infringe upon "interests in safeguarding election integrity." *Pitts v. United States*, No. 1:26-cv-809, 2026 WL 1970785, *12–14 (N.D. Ga. May 6, 2026) (emphasis added).

12. Seizure of cast ballots or other voting system components *before* certification would threaten the security, transparency, and ultimate validity of an election. *See* Justin Levitt & John Keller, *Election-Related Search Warrants* 7–12 (Working Paper Aug. 1, 2026), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=7227158.

13. Election officials around the country rigorously maintain chain of custody during the election process—including any time cast ballots are accessed or moved—to ensure that election results are trustworthy and verifiable. *See, e.g.*, The Elections Group, *Chain of Custody* (2024), https://perma.cc/A7EA-N4NW; U.S. Election Assistance Comm'n, *Best Practices: Chain*

*of Custody* (2021), https://perma.cc/5NAV-DNYN. Seizure of cast ballots or other voting system components would break the chain of custody, which could make it impossible for officials to certify the results of federal elections, as the Constitution requires. *See* U.S. Const. art. I, § 4, cl. 1; *see also, e.g.*, *Waters v. Gnemi*, 907 So. 2d 307, 335 (Miss. 2005); *Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1204–04 (Ill. Ct. App. 2004).

14. Seizure of lawfully cast ballots prior to certification would violate voters' First Amendment rights. *See, e.g.*, *Libertarian Party v. D.C. Bd. of Elections & Ethics*, 768 F. Supp. 2d 174, 180 (D.D.C. 2011). Americans speak their political preferences by voting, and tabulation and certification are how that speech is conveyed to its audience. *See, e.g.*, *Turner v. D.C. Bd. of Elections & Ethics*, 77 F. Supp. 2d 25, 31 (D.D.C. 1999); *see also Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983); *United States v. Classic*, 313 U.S. 299, 315 (1941); *United States v. Mosley*, 238 U.S. 383, 386 (1915). Any mass seizure of cast ballots or other voting system components prior to tabulation and certification could prevent protected speech from reaching its audience, a quintessential prior restraint. *See, e.g.*, *Roaden v. Kentucky*, 413 U.S. 496, 504 (1973); *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam); *Marcus v. Search Warrants*, 367 U.S. 717, 738 (1961).

15. Seizure of records and papers requisite to voting in an election would also violate Title III of the Civil Rights Act, 52 U.S.C. §§ 20701–06, which requires officers of election to retain and preserve such materials and authorizes federal officials only to inspect, reproduce, or copy such materials at the election official's office. *See also* 106 Cong. Rec. 6959 (Mar. 30, 1960) (noting deletion of a provision allowing the production of records at the local office of the United States Attorney); *United States v. Evans*, No. 1:25-cv-4403, 2026 WL 2267774, at *10 (D.D.C. Aug. 6, 2026) (addressing limitations on federal access to election records).

16. Last month, DOJ sent letters to officials in all 50 states and the District of Columbia warning that that could face criminal charges for allowing noncitizens to remain on their lists of eligible voters or facilitating noncitizens in receiving and casting ballots. Elsewhere, DOJ has argued that allowing registrants deemed ineligible by federal officials to cast ballots may lead to prosecution. These preemptive threats suggest that federal law enforcement may have already opened initial assessments, laying the groundwork for potential seizures of election materials prior to certification of the 2026 midterm election.

**Removal of Justice Department Guardrails Against Ballot Seizure**

17. Removal of longstanding guidance from the DOJ website, gutting of DOJ's Public Integrity Section, and extraordinary DOJ actions and omissions with respect to warrant applications and grand jury subpoenas afford these records time-sensitive importance.

18. DOJ has long published *Federal Prosecution of Election Offenses*, a monograph setting out guidelines for these sensitive prosecutions. *See* U.S. Dep't of Justice, *Federal Prosecution of Election Offenses* (8th ed. 2017) (Richard C. Pilger, ed.). In recent months, DOJ removed *Federal Prosecution of Election Offenses* from its website and has not issued an updated edition or alternative guidance.

19. *Federal Prosecution of Election Offenses* explained that "[i]n most cases, election-related documents should not be taken from the custody of local election administrators until the election to which they pertain has been certified and the time for contesting the election results has expired." *Id.* at 11. The only exception to this "non-inference policy" was where there was "evidence that local election administrators seek to retain or destroy the election records for a corrupt purpose or to further an ongoing election fraud scheme." *Id.* at 11 n.3.

20. *Federal Prosecution of Election Offenses* further explained that even when "taking custody of election documents, election officials should not be deprived of documents necessary to tally and recount the ballots and to certify the election results." *Id.* at 83. Once again, the only potential exception to this rule applied where "election officials are involved in an ongoing fraud or obstruction scheme." *Id.* at 83 n.39.

21. The DOJ *Justice Manual* remains on the Department's website and sets election noninterference policies, albeit in less detail. *See* U.S. Dep't of Justice, *Justice Manual* §§ 9-85.300 to .500, https://www.justice.gov/jm/justice-manual ("[T]he Department should not engage in overt criminal investigative measures in matters involving alleged ballot fraud until the election in question has been concluded, its results certified, and all recounts and election contests concluded."). Yet the Justice Manual also recognizes that the Public Integrity Section may approve exceptions to these general policies. *See id.* § 9-85.300. Since January 2025, the Public Integrity Section has been gutted—reduced from roughly 40 attorneys to only two—raising questions about the continued role of career prosecutors in such sensitive decisions.

22. In recent months, DOJ has also taken aggressive positions with respect to warrant applications and grand jury subpoenas, including deviating from a formal DOJ regulation. *See, e.g.*, Let. from Hon. Patrick J. Schlitz, *In re: United States of America*, No. 26-1135 (8th Cir. Jan. 23, 2026) ("frivolous" claim of "a national-security emergency" as basis to demand a district judge immediately sign a warrant application rejected by a magistrate judge); Charlie Savage, *U.S. Failed to Alert Judge to Press Law in Application to Search Reporter's Home*, N.Y. Times (Feb. 2, 2026) (failure to notify a magistrate judge of applicable statutory protections); Michael M. Grynbaum & Jonah E. Bromwich, *U.S. Withdraws Subpoenas Issued to New York Times Journalists*, N.Y. Times (July 23, 2026) (subpoena issued contrary to 28 C.F.R. § 50.10).

**Democratic National Committee Voter Protection and Election Litigation**

23. The DNC runs voter protection and litigation programs to ensure that eligible voters can cast ballots that will be counted.

24. The DNC maintains IWillVote.com, VoyaVotar.com, and SMS-based resources to help voters register to vote, verify voter status, update voter information, learn about polling places and ID requirements, and find important dates and deadlines for voting.

25. The DNC's voter protection hotline—1-833-DEM-VOTE—is monitored by DNC employees and volunteers to address complex voter concerns.

26. Gathering accurate information concerning the planned actions of federal, state, and local officials is critical to DNC's voter protection efforts.

27. The DNC also routinely litigates election law disputes to protect free and fair elections, including ensuring that ballots cast by eligible citizens are counted and that lawfully conducted elections are certified by local and state officials. *See, e.g.*, *Adams v. Fulton Cnty.*, 918 S.E.2d 402, 403 n.2 (Ga. Ct. App. 2025).

28. In the past year, DNC litigation efforts have included challenges to executive branch usurpation of authority to establish the time, place, and manner of conducting elections for federal office—authority that the Constitution reserves to Congress and the States—and litigation under FOIA concerning potential deployment of federal troops or armed agents to the polls, in violation of 18 U.S.C. § 592.

29. Gathering accurate information concerning the planned actions of federal, state, and local officials is critical to DNC's litigation efforts.

30. In February 2026, the DNC sent two requests for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to Department of Justice components concerning any potential seizure of election materials prior to the certification of an election.

31. FOIA requires agencies to provide a substantive response to FOIA requests "within 20 days"—excluding weekends and holidays—which may be extended for no more than "ten working days." 5 U.S.C. § 552(a)(6)(A)(i)(I), (B)(i).

32. FOIA also requires agencies to respond to any administrative appeal "within twenty days"—excluding weekends and holidays—which once again may be extended for no more than "ten working days." 5 U.S.C. § 552(a)(6)(A)(ii), (B)(i). This deadline otherwise "shall not be tolled" unless the agency makes a one-time request for additional information or seeks clarification regarding fees. 5 U.S.C. § 552(a)(6)(A)(ii)(I)–(II).

33. Although more than five months have now passed, the DNC has yet to receive a substantive response to the FOIA requests at issue.

**Department of Justice: Federal Bureau of Investigation**

34. On February 6, 2026, the DNC sent a FOIA request to the Federal Bureau of Investigation (FBI) via the FBI Electronic Freedom of Information / Privacy Act (EFOIPA) Platform and first-class mail seeking records related to "planned, anticipated, or potential inspection or seizure of election materials—with or without a warrant—to be conducted in the period beginning 30 days before a federal primary or general election and the certification of such election by appropriate state election officials."

35. The request specified that "election materials" included "ballots, voting machines, and other voting system components, as defined by Section 301(b) of the Help America Vote Act, 52 U.S.C. § 21081(b)."

36. The request sought records including communications, factual material, formal or informal directives, policy documents, or records addressing final agency decisions or actions.

37. A true and correct copy of this request is attached as Exhibit 1.

38. On February 18, 2026, the FBI sent a letter acknowledging receipt of this request, assigning reference number 1719295-000, and summarizing the subject as "Seizure of Election Materials (On or After January 20, 2025)."

39. On March 27, 2026, the FBI sent a form letter stating that the request was being administratively closed because it "is too vague as it does not comply with the requirements of 28 CFR § 16.3(b)." The letter continued, "Your request lacks specificity; and therefore, the FBI cannot reasonably locate records with a 'reasonable amount of effort.'" The letter also provided "[e]xamples of specific information which could assist in locating potentially responsive records" related to "Individuals" and "Organizations or Events" but not related to FBI policies, guidelines, or communications. A true and correct copy of this response is attached as Exhibit 2.

40. On March 31, 2026, the DNC contacted the FBI's public liaison to ask whether the DNC might work with the FBI to address its specificity concerns. *See* 5 U.S.C. § 552(a)(6)(A)(i)(III)(bb) (affording FOIA requestors a right to "seek dispute resolution services from the FOIA Public Liaison of the agency" following an adverse determination). The FBI refused to engage in a cooperative process and advised that an administrative appeal was the only path forward.

41. On April 21, 2026, the DNC filed an administrative appeal of the FBI's decision to administratively close the FOIA request. The appeal explained that the DNC's request both spelled out a limited universe of responsive documents and offered further clarity through discussion in the fee waiver request. Moreover, the appeal explained that the FBI failed to comply with 28

C.F.R. § 16.3(b), which requires any determination that a FOIA request lacks specificity "to inform the requester what additional information is needed or why the request is otherwise insufficient." A true and correct copy of this appeal is attached as Exhibit 3.

42. That same day, the DOJ Office of Information Policy (OIP) returned a confirmation letter assigning number A-2026-01211 to the appeal.

43. The DNC has not received any further communications from the FBI or OIP regarding this request.

44. To date, the FBI has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

45. Through OIP's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

46. The FBI has wrongfully withheld the requested records from the DNC.

**Department of Justice: Criminal Division**

47. On February 6, 2026, the DNC sent a FOIA request to the Criminal Division of the Department of Justice (CRM) via email and first-class mail seeking records related to "planned, anticipated, or potential inspection or seizure of election materials—with or without a warrant—to be conducted in the period beginning 30 days before a federal primary or general election and the certification of such election by appropriate state election officials."

48. The request specified that "election materials" included "ballots, voting machines, and other voting system components, as defined by Section 301(b) of the Help America Vote Act, 52 U.S.C. § 21081(b)."

49. The request sought records including communications, factual material, formal or informal directives, policy documents, or records addressing final agency decisions or actions.

50. A true and correct copy of this request is attached as Exhibit 4.

51. On February 12, 2026, CRM sent a letter acknowledging receipt of this request, assigning reference number CRM-302409760, and summarizing the subject as "Inspection or Seizure of Election Materials."

52. CRM also concluded that other components of DOJ could also maintain the requested records and routed the request to the Civil Rights Division (CRT) and OIP for processing and a direct response back to the DNC.

53. On February 24, CRT sent a letter acknowledging receipt of the request and assigning reference number 26-00267-F.

54. The DNC has not received any further communications from CRM, CRT, or OIP regarding this request.

55. To date, CRM, CRT, and OIP have not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

56. Through CRM, CRT, and OIP's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

57. CRM, CRT, and OIP have wrongfully withheld the requested records from the DNC.

## CLAIM FOR RELIEF

### Count I: Freedom of Information Act, 52 U.S.C. § 552

58. The DNC realleges and incorporates by reference the allegations set forth above.

59. By failing to respond to the DNC's requests with determinations and prompt productions of responsive records within the statutorily mandated time period, DOJ has violated its duties under 5 U.S.C.§ 552, including but not limited to, its duties to conduct a reasonable

search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold non-exempt portions of responsive records

**PRAYER FOR RELIEF**

WHEREFORE, the Democratic National Committee requests that this Court:

A. Order DOJ to conduct searches for any and all responsive records to the DNC's FOIA requests using search methods reasonably calculated to lead to discovery of all responsive records;

B. Order DOJ to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

C. Enjoin DOJ from continuing to withhold any and all non-exempt responsive records;

D. Award the DNC its costs, attorneys' fees, and other disbursements for this action; and

E. Grant any other relief this Court deems appropriate.

Dated: August 20, 2026

Respectfully submitted,

*/s/ Daniel J. Freeman*

Daniel J. Freeman
(Bar No. 90038422)
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20003
(202) 863-8000
freemand@dnc.org

Benjamin B. Klubes
(Bar No. 428852)
Adam Miller
(Bar No. 496339)
Klubes Law Group
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 753-5054
blkubes@klubeslaw.com
amiller@klubeslaw.com